UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
ALIRON INTERNATIONAL, INC.,   )
                              )
        Plaintiff,            )
                              )
        v.                    )   Civil Action No.
                              )   05-151 (GK)
CHEROKEE NATION INDUSTRIES,   )
INC.,                         )
                              )
        Defendant.            )
_____ )
```

**MEMORANDUM OPINION**

Plaintiff, Aliron International, Inc. ("Aliron"), brings this action for breach of contract and unjust enrichment against Defendant Cherokee Nation Industries, Inc. ("CNI"). This matter is before the Court on Defendant's Motion to Compel Arbitration and Dismiss or Stay Pending Arbitration. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendant's Motion, [#11], is **granted** and this case is **dismissed**.

**I.   Background**[1]

On November 23, 1998, the United States Army entered into a contract ("Prime Contract") with CNI, under which CNI was to provide certain dental services to Army personnel in Germany, beginning on January 1, 1999.

---

[1] The facts set forth herein are taken from Plaintiff's Complaint, or from the undisputed facts as set forth in the parties' briefs.

On December 30, 1998, Plaintiff entered into a Subcontract with CNI, under which Plaintiff was to provide certain services and personnel to CNI, in order for CNI to be able to perform its obligations under the Prime Contract.  Pursuant to the Subcontract, Aliron was to perform 49% of the work under the Prime Contract and, in exchange, CNI would pay Aliron 49% of the net revenue CNI received from the Prime Contract.  In the Subcontract, the parties agreed to submit "any dispute between [them]" "to binding arbitration in the State of Oklahoma," under the rules of the American Arbitration Association ("AAA").  Subcontract, Ex. 1 at § 28.0.

About two weeks after CNI began performance of the Prime Contract, CNI informed Aliron that a Status of Forces Agreement ("SOFA") between the United States and Germany precluded Aliron from employing personnel in Germany under the Subcontract.  As a result of the SOFA, on January 3, 2000, CNI and Aliron entered into an "Agreement for Administrative Support and Transfer of Personnel" ("Support Agreement").  The Support Agreement states that it was entered into "to preserve the bargain between the parties reached in the Subcontract between Aliron and CNI . . . ."  Def.'s Mot., Ex. 2 at 1.  More specifically, the purpose of the Support Agreement was to "make it possible for CNI to access [Aliron's] employees for the performance of the [Subcontract]."  Pl.'s Compl. ¶ 8.  Accordingly, under the Support Agreement, Aliron transferred

its medical services employees to CNI's payroll in exchange for CNI's payment to Aliron of approximately $100,000 per month for the life of its contract with the Army.  Pl.'s Compl. ¶ 19.

Aliron brought this lawsuit alleging that "[s]tarting in April 2004 . . . CNI stopped making payments to Aliron, and has since refused to make any further payments," resulting in damages exceeding $1,800,000.  Pl.'s Compl. ¶¶ 21, 29.

## II.  Standard of Review

Defendant has styled its Motion as a Motion to Compel Arbitration and Dismiss or Stay Pending Arbitration.  Such motions are properly reviewed under the summary judgment standard of Rule 56(c).  Hughes v. CACI, Inc., 384 F. Supp. 2d 89, 92-93 (D.D.C. 2005) ("'inasmuch as the district court's order to arbitrate is in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate[,]' consideration of the motion according to the 'standard used by district courts in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c) . . . is appropriate.'") (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n.9 (3d Cir. 1980); also citing Nelson v. Insignia/Esg, Inc., 215 F. Supp. 2d 143, 147 (D.D.C. 2002); Lok Tio v. Wash. Hosp. Center, 2004 WL 2663149, at *2-3 (D.D.C. 2004)).

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file,

together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). A fact is "material" if it might affect the outcome of the action under the governing law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party then must "go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotations omitted); see Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (nonmoving party has affirmative duty "to provide evidence that would permit a reasonable jury to find" in its favor).

In deciding a motion for summary judgment or, in this case, a motion to compel arbitration, the "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52.

**III.  Analysis**

    **A.  The Federal Arbitration Act**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "By enacting the FAA, Congress 'manifest[ed] a liberal federal policy favoring arbitration of agreements.'"  Brown v. Wheat First Securities, Inc., 257 F.3d 821, 825 (D.C. Cir. 2001), cert. denied, 534 U.S. 1067 (2001) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (citations omitted)).

Under the FAA, "[t]here is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted disputes.  Doubts should be resolved in favor of coverage.'"  Jung v. Ass'n of Am. Med. Colls., 300 F.

Supp. 2d 119, 144-45 (D.D.C. 2004) (quoting AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986)); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ("as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); see also Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989) (stating that "ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration").

**B.  The Subcontract and the Support Agreement, Construed Together as One Contract, Require Arbitration of Plaintiff's Claims**

The Support Agreement expressly provides that it is to be interpreted under Oklahoma law. Def.'s Mot, Ex. 2 § 13. Under Oklahoma law, "[w]here two contracts, not executed at the same time, refer to the same subject matter and show on their face that one was executed to carry out the intent of the other, it is proper to construe them together as if they were one contract." Bixler v. Lamar Exploration Co., 733 P.2d 410, 411-12 (Okla. 1987) (citing Davis v. Hastings, 261 P.2d 193, 195 (Okla. 1953)).

In this case, both the Subcontract and the Support Agreement refer to the same subject matter. They both concern the means by which Aliron and CNI will work together to satisfy CNI's obligations under the Prime Contract. Moreover, the Support Agreement repeatedly states that its purpose is to carry out the

intent of the Subcontract.  See, e.g., Def.'s Mot., Ex. 2 at 1 ("THEREFORE, CNI and Aliron agree as follows: 1. This arrangement is entered into to preserve the bargain between the parties reached in the Subcontract between Aliron and CNI . . .").

Under Oklahoma law, because the Subcontract and the Support Agreement involve the same subject matter, and because the plain language on the face of the Support Agreement indicates that it was entered into to preserve the intent of the Subcontract, they must be construed together as one contract. Bixler, 733 P.2d at 411-12.

Therefore, Section 28 of the Subcontract, requiring that "any dispute" between the parties be submitted "to binding arbitration in the State of Oklahoma" under the rules of the AAA, governs Plaintiff's claims that CNI has breached the Support Agreement. Subcontract, Ex. 1 at § 28.0.  Accordingly, Defendant's Motion to Compel Arbitration must be **granted**, and all of Plaintiff's claims must be submitted to binding arbitration in accordance with Section 28 of the Subcontract.

### C.  Dismissal Is Appropriate

The FAA provides that when the court is satisfied that the issues before it are subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3.

It is well established that this section does not preclude a court from dismissing an action all together "in the proper circumstances," including where "all issues raised in the complaint must be submitted to arbitration." <u>Emeronye v. CACI Int'l, Inc.</u>, 141 F. Supp. 2d 82, 88 (D.D.C. 2001) (internal citation omitted); <u>see also</u> <u>Cole v. Burns Int'l Sec. Servs.</u>, 1996 U.S. Dist. LEXIS 22541 at 11-12 (D.D.C. Jan. 31, 1996), <u>aff'd</u>, 105 F.3d 1465 (D.C. Cir. 1997); <u>Nelson</u>, 215 F. Supp. 2d at 158.

In this case, all of Plaintiff's claims must be submitted to arbitration, since the arbitration clause applies to <u>any</u> dispute that may arise between the parties. Since there is no further action to be taken by this Court, it is appropriate to **dismiss** this case in its entirety.

**IV. Conclusion**

For the reasons stated above, Defendant's Motion to Compel Arbitration is **granted**, and this case is hereby **dismissed**.

An Order will issue with this Memorandum Opinion.

June 28, 2006

/s/
Gladys Kessler
U.S. District Judge

**Copies to:** Attorneys of record via ECF